The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>ERIC SHIBLEY,<br><br>Defendant. | NO. CR20-174 JCC<br><br>**TRIAL BRIEF**<br><br>**Trial Date:** November 15, 2021 |

## I.    INTRODUCTION

Defendant Eric Shibley is charged with wire fraud, bank fraud, and money laundering, arising out of defendant's scheme to obtain millions of dollars from COVID-19 relief programs set up by the government, including the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") program run by the Small Business Administration ("SBA").  Shibley's scheme involved the submission of false and fraudulent information and documentation about entities that he controlled to participating lenders and the SBA, including:

- That Shibley had over 100 employees across six different businesses;
- That Shibley paid payroll of approximately $1,000,000 a month across his six different businesses; and
- That Shibley paid payroll taxes for his over 100 employees.

Further, in his PPP applications, Shibley falsely affirmed that he was not on probation, when in fact he was on probation for violating a protection order from Skagit County.

Defendant told these lies to fraudulently obtain emergency economic funds intended to, among other things, enable small businesses to keep their businesses operating and employees on payroll through the crisis of COVID-19. As part of his scheme, Defendant submitted approximately 25 fraudulent PPP loan applications and approximately 13 fraudulent EIDL applications. The PPP loan applications submitted by Defendant included falsified payroll-tax forms, among other things, and fraudulently represented the borrowing entities' number of employees and amount of payroll. As a result of the fraudulent PPP loan and EIDL applications submitted as part of the scheme, the participating lenders and the SBA disbursed over $2.5 million in fraudulent loan proceeds to Shibley.

The fifteen-count Indictment charges Shibley with wire fraud, bank fraud, and money laundering. Trial is scheduled for November 15, 2021. The government expects to call fifteen to twenty witnesses and expects that its case in chief will last approximately five days.

## II.    BACKGROUND AND SUMMARY OF EVIDENCE

In March 2020, in response to the many challenges presented by the COVID-19 pandemic, Congress passed the CARES Act, which created the PPP and expanded the EIDL Program. The PPP authorized $349 billion in forgivable loans to small businesses to be used for payroll, mortgage interest, rent/lease payments, or utilities. In April 2020, Congress authorized an additional $310 billion for PPP funding. These funds were designed to address the unprecedented crisis facing Americans—especially business owners and their employees whose livelihoods were threatened by the public health emergency.

The PPP was designed to provide funds quickly and easily to qualifying individuals. To apply, individuals submitted an application to a participating financial

*United States v. Shibley* – CR20-174 JCC
TRIAL BRIEF- Page 2

institution along with supporting documentation as to the business's payroll expenses. The supporting documentation requirement was minimal, and could be satisfied with one years' worth of the company's tax records. If a PPP loan application was approved, the participating financial institution funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

The EIDL program was authorized by the CARES Act to provide loans of up to $2 million to eligible small business experiencing substantial financial disruption due to the COVID-19 pandemic. To apply, applicants submitted an application directly to the SBA and provided information about the business's operations, including its number of employees and gross revenues for the 12-month period preceding January 31, 2020.

In the face of this unprecedented crisis and government response, defendant, a Seattle doctor, sought to enrich himself by submitting approximately 25 fraudulent PPP applications and 13 EIDL applications, seeking millions of dollars in pandemic relief funds in the names of entities without payroll or employees. Defendant, who was on probation at the time he applied for the loans, also lied about his probationary status on all of his applications. The loan applications were supported by fake tax documents, including IRS Forms 941 and W3. After receiving the loan funds, defendant sought to take out the proceeds in cash. Once he learned that the lenders and the government were on to his scheme, defendant continued to apply for COVID-19 relief loans and take out loan proceeds in cash.

The government intends to prove its case against Defendant using the evidence detailed below.

The government will introduce evidence and testimony about the approximately 25 fraudulent PPP loans and 13 fraudulent EIDL loans sought by defendant. The evidence and testimony related to the loans will include:

- Records from the PPP lenders of the approximately 25 PPP loans sought by defendant, including loan applications, loan notes, supporting loan documentation, such as tax returns and identification, and email and phone

*United States v. Shibley* – CR20-174 JCC
TRIAL BRIEF- Page 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

correspondence related to the PPP loans for the Eric R Shibley MD PLLC, SS1 LLC, ES1 LLC, The A Team Holdings LLC, Dituri Construction LLC, and SFC LLC a/k/a Seattle's Finest Cannabis LLC (the "Shibley entities");

- Testimony from PPP lenders about their role in the PPP and the program requirements, including that they would not have approved a PPP application that contained false statements about the existence of the business, the number of employees, the payroll, or the owner's probationary status;

- Records from the SBA of the approximately 13 EIDL loans sought by defendant, including loan applications, internal SBA files, and IP address information related to EIDL loans for the Shibley entities;

- Testimony from SBA employees about the PPP and EIDL program, including testimony that the SBA would not have approved an EIDL application that contained false statements about the existence of the business, the number of employees, the payroll, or the owner's probationary status;

The government will introduce evidence showing that the payroll and employee numbers listed on defendant's loan applications were false. This will include evidence showing that the six entities that defendant used to apply for funds from the PPP and EIDL program had not paid federal or state payroll taxes in 2019 and 2020. The government will introduce testimony and records from federal and state agencies including the Internal Revenue Service ("IRS"), the Washington Secretary of State ("SOS"), the Washington State Department of Revenue ("DOR"), and the Washington State Employment Security Department ("ESD"). The government will also introduce defendant's bank records and the testimony of a summary witness, who will testify about relevant financial transactions.

The government will also introduce evidence and testimony demonstrating that certain individuals that defendant claimed as employees had not worked for him or his

entities.  The government will introduce emails from defendant to Celtic and Harvest listing purported employees for his businesses.  The government will introduce employment records from ESD of the claimed employees showing that Washington state has no record of them working for defendant.  It will also include testimony from one of defendant's purported employees, who will testify that she does not know defendant and has never worked for him.

The government will show that the defendant lied on his PPP applications about his probation status.  The government will introduce evidence and testimony that defendant was sentenced to a term of two years of probation from December 2018 through December 2020 for a Violation of a No Contact Order, and that he was reminded of his probation status during a meeting with his probation officer in January 2020.

### III.     CHARGES AND ELEMENTS

The fifteen-count Indictment charges Shibley with wire fraud, bank fraud, and money laundering.

### A.     Counts 1-7: Wire Fraud

Counts 1-7 charge Shibley with executing a scheme to defraud the PPP and EIDL program by submitting false and fraudulent loan applications in violation of 18 U.S.C. § 1343. The government has proposed the Ninth Circuit's model instruction (Instruction 8.124) in its proposed jury instructions.

To prove the offense of Wire Fraud under 18 U.S.C. § 1343, the government must prove the following elements beyond a reasonable doubt:

First, the defendant knowingly devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or omitted facts.  Deceitful statements of half-truths may constitute false or fraudulent representations;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

*United States v. Shibley* – CR20-174 JCC
TRIAL BRIEF- Page 5

1    Third, the defendant acted with the intent to defraud, that is, the intent to deceive
2 and cheat; and

3    Fourth, the defendant used, or caused to be used, an interstate wire communication
4 to carry out or attempt to carry out an essential part of the scheme.

5 **B.    Counts 8-10: Bank Fraud**

6    Counts 8-10 charge Shibley with the same scheme to defraud, by submitting false
7 and fraudulent loan applications to financial institutions participating in the PPP in
8 violation of 18 U.S.C. § 1344(2). The government has proposed the Ninth Circuit's
9 model instruction (Instruction 8.127) in its proposed jury instructions.

10    To prove the offense of Bank Fraud under 18 U.S.C. § 1344(2), the government
11 must prove the following elements beyond a reasonable doubt:

12    First, the defendant knowingly carried out a scheme or plan to obtain money or
13 property from the financial institution by making false statements or promises;

14    Second, the defendant knew that the statements or promises were false;

15    Third, the statements or promises were material; that is, they had a natural
16 tendency to influence, or were capable of influencing, a financial institution to part with
17 money or property;

18    Fourth, the defendant acted with the intent to defraud; and

19    Fifth, the financial institution was federally insured.

20 **C.    Counts 11-15:  Money Laundering**

21    Counts 11-15 charge Shibley with laundering the proceeds of his fraudulent
22 scheme in violation of 18 U.S.C. § 1957. The government has proposed the Ninth
23 Circuit's model instruction (Instruction 8.150) in its proposed jury instructions.

24    To prove the offense of Money Laundering under 18 U.S.C. § 1957, the
25 government must prove the following elements beyond a reasonable doubt:

26    First, the defendant knowingly engaged or attempted to engage in a monetary
27 transaction;

28    Second, the defendant knew the transaction involved criminally derived property;

*United States v. Shibley* – CR20-174 JCC
TRIAL BRIEF- Page 6

1    Third, the property had a value greater than $10,000;

2    Fourth, the property was, in fact, derived from wire fraud or bank fraud, as

3    charged in Counts One through Ten of the Indictment; and

4    Fifth, the transaction occurred in the United States.

## IV.    EVIDENTIARY ISSUES

6    Following is a discussion of evidentiary issues relevant to the government's case:

7    **A.    Pretrial Motions and Motions in Limine**

8    The parties have followed their obligation to meet and confer about motions *in*

9    *limine*.  The government has filed one motion *in limine* along with this trial brief.

10    **B.    Business and Public Records**

11    The government will offer records of regularly conducted activities of businesses

12    and public agencies.  The government has provided notice that it intends to certain

13    business and public records by offering Federal Rule of Evidence 902(11) certifications

14    to counsel for defendant.  Based on the representations of counsel, the government does

15    not expect defendant to object to the introduction of business and public records using

16    902(11) certifications.

17    **1.    Business Records**

18    The government will introduce business records kept and maintained by financial

19    institutions, financial lenders, internet service providers, phone service providers, and the

20    accounting firm Pinnacle Signature Group. The government also plans to introduce

21    emails obtained from some of these entities.  These records are admissible pursuant to

22    Rule 803(6), which allows for admission of a record if it is made at or near the time of the

23    events set forth therein, by a person with knowledge, and is kept in the course of

24    regularly-conducted activity of a business or other organization, if it is the regular

25    practice of the organization to make the record. Fed. R. Evid. 803(6). Incompleteness,

26    ambiguities, and inaccuracies in records go to the weight to be given the evidence, not to

27    its admissibility. *United States v. Catabran*, 836 F.2d 453, 458 (9th Cir. 1988).

28

*United States v. Shibley* – CR20-174 JCC
TRIAL BRIEF- Page 7

1  Any person familiar with the record-keeping practices of the business is a
2  sufficient foundational witness. Personal knowledge of the document is not required and
3  does not affect its admissibility. *United States v. Childs*, 5 F.3d 1328, 1334 (9th Cir.
4  1993) (the phrase "other qualified witness" is broadly interpreted to require "only that the
5  witness understand the record-keeping system" at the particular organization).
6  Furthermore, a record generated by a third party and received and relied upon in the
7  ordinary course, such as an invoice, becomes a business record of the company relying
8  upon it. *Childs*, 5 F.3d at 1333-34; *see United States v. Jawara*, 474 F.3d 565, 585 (9th
9  Cir. 2007) ("[W]e would have no trouble concluding that a college in the United States
10  was a proper custodian of its' students' SAT results, even though the SAT results were
11  actually prepared by another entity"). The government need not show the records are
12  accurate; it needs only to show the records are kept in a regular manner and are relied
13  upon for the management and operation of the business. *Johnson v. United States*, 325
14  F.2d 709, 711 (1st Cir. 1963). In determining whether these foundational facts have been
15  established, the court may consider hearsay and other evidence not admissible at trial.
16  Fed. R. Evid. 104(a).

17  The government intends to authenticate certain business records by offering
18  Federal Rule of Evidence 902(11) certifications rather than live testimony. Rule 902(11)
19  provides that a party may authenticate a business record through a signed certification of
20  records custodian if the proponent of the evidence gives the adverse party adequate notice
21  of its intent to offer the record. The government has provided (or will provide) all
22  902(11)s to the defense.

23  **2.    Public Records**

24  Rule 803(8) provides an exception to the hearsay rule for public records from a
25  public agency or office, relating to an activity of the office. "Records kept . . . [b]y public
26  agencies may be admissible under the business records exception, Fed. R. Evid. 803(6),
27  as well as under the public records exception, Fed. R. Evid. 803(8)." *United States v.*
28  *Bohrer*, 807 F.2d 159, 162 (10th Cir. 1986) (internal citations omitted).

*United States v. Shibley* – CR20-174 JCC
TRIAL BRIEF- Page 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    The government will seek to introduce records from the SBA, Washington State

2    DOR, Washington State ESD, and Washington SOS.  Public records are self-

3    authenticating and do not require testimony of a live witness when there are either: (1)

4    presented with a certification a custodian of records pursuant to Rule 902(11); or (2)

5    certified as correct by an official. Fed. R. Evid. 902(4).

6    The government will also seek to introduce the certified Pennsylvania death

7    certificate of an individual named Sam Morgan, because defendant used Mr. Morgan's

8    name and birthdate to claim that Mr. Morgan was one of defendant's employees.  A death

9    certificate is admissible as a "record of a birth, death, or marriage, if reported to a public

10   office in accordance with a legal duty." Fed. R. Evid. 803(9).

11   **C.    Statements of the Defendant**

12   The government expects to offer certain written and oral statements from the

13   defendant at trial. These statements are not hearsay. *See* Fed. R. Evid. 801(d)(2).  The

14   government will offer defendant's email communications, loan applications prepared by

15   defendant, audio recordings of conversations with defendant, and witness testimony

16   about statements made by the defendant.

17   The government will offer emails with defendant as business records authenticated

18   through Rule 902(11), as noted above.  As discussed above, statements of the

19   defendants—whether oral or written—are not hearsay. Fed. R Evid. 801(d)(2). The

20   government will offer certain emails from defendant. These include responses to email

21   chains where the entire chain is needed for context.

22   The government will also offer certain audio recordings with defendant.  Some of

23   these recordings were made by businesses in their regular course of business and will be

24   authenticated through Rule 902(11).

25   Two recordings with defendant were made by undercover federal agents posing as

26   Celtic Bank and Harvest Small Business Finance representatives.  The FBI case agent

27   who has spoken with defendant will introduce and authenticate the recordings at trial.

28   Under Federal Rule of Evidence 901(a), "[w]here the government offers a tape recording

*United States v. Shibley* – CR20-174 JCC
TRIAL BRIEF- Page 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

of the defendant's voice, it must also make a prima facie case that the voice on the tape is in fact the defendant's...." *United States v. Ortiz*, 776 F.3d 1042, 1044 (9th Cir. 2015). "Lay opinion ... is permissible so long as the witness testifying has [the] requisite familiarity with the speaker. *Id.* The opinion must be "based on hearing the voice at any time under circumstances that connect it with the alleged speaker." Fed.R.Evid. 901(b)(5). "Rule 901(b)(5) establishes a low threshold for voice identifications"—an identifying witness need only be "minimally familiar with the voice he identifies." *Ortiz,* 776 F.3d at 1044. Testimony of voice recognition constitutes sufficient authentication. *United States v. Torres*, 908 F.2d 1417, 1425 (9th Cir. 1990) (DEA agent who had spoken with defendant could authenticate her voice on tape by testifying to voice recognition). "[T]apes are sufficiently authenticated under Fed.R.Evid. 901(a) if 'sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.'" *United States v. Campbell*, 85 F.3d 638 (9th Cir. 1996). This Rule establishes a "low threshold" for authenticity; essentially anyone "minimally familiar" with the recorded voice can authenticate the recording. *Hathaway v. Idaho Pac. Corp.,* No. 4:15-CV-00086-DCN, 2017 WL 4798125, at *5 (D. Idaho Oct. 23, 2017).

Defendant may not introduce his own statements through the testimony of another witness. Although the United States is permitted to introduce such statements through the testimony of the witness pursuant to Federal Rule of Evidence 801(d)(2), that rule is unavailable to a defendant since he is the proponent of the evidence and, where he seeks to introduce it, it is not offered against him. *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988). Under Rule 801(d)(2), a statement by a party is not hearsay only when it is being offered against the party that made the statement, not when it is offered on the declarant's behalf. Indeed, even where the United States elicits the inculpatory portion of defendant's statement from a witness, on cross-examination, the defendant is not entitled to elicit the exculpatory portion. *See Ortega*, 203 F.3d at 682. The rule of completeness (Fed. R. Evid. 106) has no place in this analysis since it applies only to written or recorded

1  statements. *Id.*

2  **D.    Intent to Repay is Not a Defense**

3  The defendant should not be permitted to implicitly or explicitly assert through

4  examination or argument that an intent to repay the PPP or EIDL funds is a defense to the

5  charges of fraud in the loan applications. *See United States v. Miller*, 9053 F.3d 1095,

6  1103 (9th Cir. 2020), *citing United States v. Hamilton*, 499, F.3d 734, 736 (7th Cir. 2007)

7  ("If you embezzle from your employer you are not excused just because you had an

8  honest intention of replacing the money, maybe with interest ....").

9  **E.    Summary Charts**

10  Three types of summaries and charts are typically used in criminal cases: (1)

11  summaries of voluminous records which may be admissible pursuant to Fed. R. Evid.

12  1006; (2) summaries created by a summary witness which may be admitted pursuant to

13  Fed. R. Evid. 611(a); and (3) demonstratives or pedagogical charts that are used as

14  testimonial aids, but which are not themselves introduced into evidence. The government

15  may seek to use summaries and charts falling within all three categories.

16  **1.    Fed. R. Evid. 1006 Summary Schedules**

17  Summaries and charts of voluminous records are used to present evidence of

18  records so voluminous as to be impractical or impossible to actually bring into court and

19  use during trial. *See* Fed. R. Evid. 1006; *United States v. Johnson*, 594 F.2d 1253, 1255

20  (9th Cir. 1979) ("The purpose of Rule 1006 is to allow the use of summaries when the

21  volume of documents is so large as to make their use impractical or impossible."). The

22  underlying records used to prepare Rule 1006 summaries are not usually admitted into

23  evidence although they can be. Proponents must lay a proper foundation for admissibility

24  of underlying records. *See United States v. Shirley*, 884 F.2d 1130, 1133 (9th Cir. 1989);

25  *United States v. Meyers*, 847 F.2d 1408, 1411 (9th Cir. 1988). The substantive content

26  must be authenticated, but that may be done by the summary witness, if the witness has

27  reviewed the underlying evidence. Fed. R. Evid. 901; *United States v. Soulard*, 730 F. 2d

28  1291, 1299 (9th Cir. 1984).

*United States v. Shibley* – CR20-174 JCC
TRIAL BRIEF- Page 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Rule 1006 allows for the summaries of voluminous materials to be admissible and

2  used as substantive evidence, rather than solely as demonstrative evidence. *See Meyers*,

3  847 F.2d at 1411-12 (admitting summary of otherwise admissible evidence as substantive

4  evidence where the summary contributed to the clarity of the presentation); *see United*

5  *States v. Baker*, 10 F.3d 1374, 1411 (9th Cir. 1993) ("[T]his Circuit has often allowed the

6  use of summary charts and summary witness testimony based on testimonial evidence

7  (most commonly in tax cases)"); *United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000);

8  *United States v. Wood*, 943 F.2d 1049, 1053 (9th Cir. 1991).

9    The government will offer into evidence summaries of voluminous PPP loan and

10  EIDL data and records, including loan applications in this case, and the bank account

11  records of defendant and his entities. These summaries will be offered through Michael

12  Petron, a Certified Public Accountant and Certified Fraud Examiner who reviewed and

13  summarized these records, or an FBI case agent.

14    The records on which the summaries are based are routinely kept in the normal

15  course of business and fall within the hearsay exception of Rule 803(6). The underlying

16  records have been available to the defense since the beginning of this case.

17    **2.    Fed. R. Evid. 611(a) Summary Testimony and Schedules**

18    Federal Rule of Evidence 611, addressing the Mode and Order of the Interrogation

19  of Witnesses, gives the Court great discretion in what a witness may use during testimony

20  so as to "(1) make the presentation effective for the ascertainment of the truth, [and] (2)

21  avoid needless consumption of time." Fed. R. Evid. 611(a); *see United States v. Gardner*,

22  611 F.2d 770,776 (9th Cir. 1980) (summary chart admissible in tax evasion case under

23  Rule 611(a)); *United States v. Paulino*, 935 F.2d 739, 752-54 (6th Cir. 1991) (testimony

24  of non-expert summary witness regarding cash generated from cocaine sales in drug

25  conspiracy case admissible under Rule 611(a) where trial court gave limiting instruction

26  and defense had full opportunity to cross-examine); *United States v. Scales*, 594 F.2d

27  558, 563-64 (6th Cir.1979) (summaries of testimonial evidence designed "to aid the jury

28  in its examination of the evidence already admitted" do not come within Rule 1006, but

*United States v. Shibley* – CR20-174 JCC
TRIAL BRIEF- Page 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

are authorized by Rule 611(a)); *see also* 5 Jack B. Weinstein and Margaret A. Berger, Weinstein's Evidence, at ¶ 1006[03] (summary "prepared by a witness from his own knowledge to assist the jury in understanding or remembering a mass of details is admissible, not under Rule 1006, but under such general principles of good sense as are embodied in Rule 611(a)").

In the event the summaries described in the above section are not considered to summarize voluminous records under Rule 1006, they should be admissible under Rule 611. Such summaries themselves can also be properly admitted into evidence. *See, e.g., Shirley*, 884 F.2d at 1133-34. In *Shirley*, the summary expert witness compiled a summary of telephone records based on information already introduced into evidence. "Summary evidence . . ., 'can help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of the multitude of witnesses.'" *Shirley*, 884 F.2d at 1133-34, *citing United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983); *see also United States v. Meyers*, 847 F.2d 1408, 1412 (9th Cir. 1988) (properly admitting chart detailing long distance calls made by various co-conspirators); *United States v. Marchini*, 479 U.S. 1085 (1987) (admitting summary calculations of IRS agent where he was cross-examined on his testimony).

### 3.    Demonstrative Charts

The government also intends to use various demonstrative charts during its opening statement, examination of witnesses, and in closing argument. Such charts include, for example, diagrams showing the flow of the loan proceeds.  The government does not intend to offer these charts into evidence.  Courts have repeatedly allowed use of charts similar to those the United States intends to use in this case. *See, e.g., United States v. Scales*, 594 F.2d 558, 561-562 (6th Cir. 1979) (summary of indictment); *United States v. Stephens*, 779 F.2d 232, 238 (5th Cir. 1985) (simple flow charts tracing the defendant's use of loan proceeds).

*United States v. Shibley* – CR20-174 JCC
TRIAL BRIEF- Page 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

## F.    Stipulations

The government and the defense will present at least one stipulation as evidence in this case.  On June 10, 2020, the government served defendant with 13 grand jury subpoenas for records relating to his various businesses.  These subpoenas requested, among other things, documents listing employee names, payroll records, and any other records of employee payments.  On June 23, 2020, defendant responded through his attorney and produced documents – but no employee lists or payroll records.  Defendant later supplemented his production through his attorney and but again did not provide employee lists or payroll records.  The parties signed a stipulation that describes the documents that Shibley produced, and the government will offer this stipulation at trial.

The parties will endeavor to reach other stipulations in order to make the trial proceed efficiently.

## G.    Hypothetical Questions

The government intends to call employees of PPP lenders, including Ready Capital, Huntington Bank (the owner of TCF Bank), Celtic Bank, Harvest Small Business Finance, and Customers Bank, and the SBA as witnesses in its case-in-chief and intends to ask these witnesses certain hypothetical questions.  For example, the government intends to ask whether they would have funded a PPP or EIDL loan if they had known that the applications included false statements and certifications, including false statements about the existence of the business, false statements about the employee and payroll numbers, and a false certification about the applicant's probationary status.  The government also intends to ask these witnesses what they would have done upon learning that a loan was funded based on an application containing false statements.  The government expects that the employees will testify that their employers would not have funded loans or would have sought to recall loan funds if they learned that a loan application contained false statements.

In *United States v. Laurienti*, 611 F.3d 530, 549 (9th Cir. 2010), the court upheld the trial court's decision allowing the government to ask victims of a securities fraud

1    scheme hypothetical questions that may have a guilt-assuming element to establish

2    materiality of defendant's actions. *Id.* (proper questions included, "If you had known

3    prior to purchasing a house stock that [the defendant's firm] prevented or discouraged

4    their brokers from allowing their clients to sell their share of the house stock, would you

5    have purchased the shares of the house stock?") (*citing United States v. Jennings*, 487

6    F.3d 564, 581–82 (8th Cir. 2007) (holding that it is generally permissible to ask guilt-

7    assuming hypotheticals of fact witnesses to prove materiality)). As in *Laurienti*,

8    hypothetical questions should be permitted to establish materiality of Defendant's

9    actions.

10   **H.    Argument and Instruction Related to "Missing Witnesses"**

11       The defendant should not be permitted to make a "missing witness" argument

12   during trial or closing argument. As discussed above, defendant sent emails to Celtic

13   Bank and Harvest and gave the names of several individuals he claimed were his

14   employees. However, ESD records will show that these individuals were not his

15   employees. The government does not intend to call most of these individuals as trial

16   witnesses. Similarly, the government does not intend to call Thomas Dituri, the

17   individual who allegedly sold Shibley the Dituri Construction LLC in early 2020.

18   Through bank and other records, the government will demonstrate that the Dituri

19   Construction business did not have the employees, payroll, or revenue as claimed by

20   Shibley.

21       The government's decision not to call these witnesses does not give rise to a

22   missing witness instruction. A missing witness argument or instruction permits the jury

23   to infer that the testimony of an absent or missing witness would have been unfavorable

24   to the opposing party. Such an inference is only allowed if the witness is "peculiarly

25   within the power of the other party" and the inference is "natural and reasonable." *United

26   States v. Leal-Del Carmen*, 697 F.3d 964, 974 (9th Cir. 2012). A missing witness

27   inference is improper if the witness is equally available to both parties. *United States v.*

28   *Bramble*, 680 F.2d 590, 592 (9th Cir. 1982).

*United States v. Shibley* – CR20-174 JCC
TRIAL BRIEF- Page 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Here, all potential witnesses are equally available to both the government and

2    defendant.  None of the above witnesses is peculiarly within the government's power and

3    any missing witness inference is not natural or reasonable. Thus, a missing witness

4    argument or jury instruction is improper.

5    **I.      The Use of Documents Authored by Law Enforcement to Impeach Witnesses**

6    The defendant should not be permitted to use documents authored by law

7    enforcement, including but not limited to summaries of witness interviews commonly

8    referred to as 302s, to impeach interviewees on the basis of inconsistent statements if

9    they are called by the government as witnesses at trial.

10   Witnesses may only be impeached with their own prior statements, and law

11   enforcement interview summaries are not the statements of the witnesses themselves.

12   The Supreme Court has recognized that it would be "grossly unfair to allow the defense

13   to use statements to impeach a witness which could not fairly be said to be the witness'

14   own rather than the product of the investigator's selections, interpretations, and

15   interpolations."  *Palermo v. United States*, 360 U.S. 343, 350 (1959).

16   In taking notes and preparing 302s or similar summaries, investigating agents

17   necessarily exercise discretion by including their characterization of only those segments

18   of a witness's interview to which the agents assign importance and relevance.  As a

19   result, the notes and 302s are not the "statements" of the interviewee.  *See United States

20   v. Claiborne*, 765 F.2d 784, 801 (9th Cir. 1985) ("The 302 summaries of interviews

21   conducted by [g]overnment agents with [the] witness . . . cannot fall within subsection (1)

22   of 18 U.S.C. § 3500(e) because [the witness] did not draft the summaries or otherwise

23   approve their contents."); *United States v. Donato*, 99 F.3d 426, 433 (D.C. Cir. 1997)

24   (under *Palermo*, FBI notes and 302s that constitute a selection of what was said during

25   the interview are not statements of interviewees that would be discoverable under the

26   Jencks Act).

27   As a result, courts have held that law enforcement summaries cannot be used to

28   impeach interviewees if they are called as witnesses at trial.  *See, e.g., United States v.*

*Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (upholding trial court's refusal to admit FBI agent's summary of interview with government witness as a prior inconsistent statement because document was "not attributable to" the witness); *United States v. Shannahan*, 605 F.2d 539, 542 (10th Cir. 1979) (upholding refusal of trial court to permit defense to use FBI report of interview to impeach government witnesses because "reports did not come within the rule authorizing the use of prior statements"); *United States v. Kot*, No. 2:10-CR-00280-KJD-GWF, 2012 WL 1657118, at *2 (D. Nev. May 10, 2012), *aff'd*, 583 F. App'x 716 (9th Cir. 2014) (precluding the defense from using FBI reports of interviews to impeach government witnesses or suggesting to the jury that the FBI report was the statement of the witness).

The government does not object to the defense cross-examining a witness using information contained in 302s. Likewise, in the appropriate circumstances and with the proper foundation, the defense may attempt to refresh a witness's recollection by showing the witness a 302, but only if the defense does so in a manner that does not imply that the 302 is the witness's own statement.

## J.    Transcripts of Recorded Conversations

The government will offer portions of recordings of conversations between defendant and undercover agents and PPP lenders. The government has prepared transcripts of the conversations to show the jurors while they listen to the recordings. The government has proposed Ninth Circuit Model Instruction 2.6, which instructs the jury that the recordings themselves are the evidence, and the transcripts only a guide.

The Ninth Circuit has approved of the use of transcripts of properly admitted recordings to aid the jury in understanding the recordings. *United States v. Turner*, 528 F.2d 143, 167-68 (9th Cir. 1975). While the transcripts should not be sent back to the jury room, the transcripts may be provided to the jury if they request to have the recordings replayed during deliberations. Because the jury is instructed that the recordings control, the court is not required to review the transcripts to determine their accuracy. *United States v. Tisor*, 96 F.3d 370, 377 (9th Cir. 1996).

*United States v. Shibley* – CR20-174 JCC
TRIAL BRIEF- Page 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V.    REDACTIONS

The government plans to redact its exhibits as detailed below in order to present critical evidence related to this case.  The government has consulted with counsel for defendant, who does not object to the government's proposal.

- Dates of Birth:  the government will redact dates of birth to the year of birth in accordance with Local Criminal Rule 49.1 on all exhibits for display at trial and filed with the Court.  However, the government will not redact certain exhibits provided to the jury for deliberation containing the dates of birth for defendant's purported employees.

- Social Security Numbers and Taxpayer-Identification Numbers (TINs):  the government will redact social security numbers and TINs to the last four numbers, rather than in full.

- Bank records and Financial Accounting Information:  the government will not redact any account numbers associated with the Shibley entities.

- Home Addresses:  the government will not be redacting the address of defendant's medical practice.

Except as noted above, the government will redact its exhibits in accordance with Local Criminal Rule 49.1.

## VI.    EXCLUSION OF WITNESSES

Pursuant to Rule 615 of the Federal Rules of Evidence, the government respectfully requests that witnesses be excluded from the courtroom, with the exception of the case agent. *United States v. Thomas*, 835 F.2d 219, 222-23 (9th Cir. 1987) (case agent permitted to remain in court through trial as a representative of the government); *see also United States v. Machor*, 879 F.2d 945, 953-54 (1st Cir. 1989) (same).

## VII.    JURY SELECTION

In light of the length of the trial and the current health conditions, the government respectfully requests that the Court seat at least one alternate juror.  Pursuant to Local Rules, the government will file proposed voir dire questions on November 5.

*United States v. Shibley* – CR20-174 JCC
TRIAL BRIEF- Page 18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

## VIII.  REBUTTAL WITNESSES

The government reserves the right to call any rebuttal witnesses depending on the defense case.

## IX.    FORFEITURE

The United States seeks forfeiture in this case and provided notice to the Defendant of this intent in the Indictment (Dkt. No. 31).  The United States also filed a Forfeiture Bill of Particulars (Dkt. No. 39) and Motion for Protective Order (Dkt. No. 40) specifically identifying the following funds and a sum of money for forfeiture:

1) $804,816.63 in U.S. funds seized on or about May 27, 2020 from a Wells Fargo account ending 3536, held in the name of The A Team Holdings, LLC;

2) $100,000 in U.S. funds seized on or about May 29, 2020 from a Wells Fargo account ending 2378 held, in the name of ES1, LLC;

3) $49,500.86 in U.S. funds seized on or about May 29, 2020 from a Navy Federal Credit Union account ending 7528, held in the name of Eric R. Shibley MD, PLLC;

4) $114,440 in U.S. funds seized on or about June 25, 2020 from a Verity Credit Union account ending 5390, held in the name of Dituri Construction, LLC;

5) $114,743.59 in U.S. funds seized on or about June 25,2020 from a Verity Credit Union account ending 5320, held in the name of SS1, LLC; and,

6) A sum of money reflecting the unrecovered proceeds the Defendant obtained from his Wire Fraud and Bank Fraud schemes.

A.  **Legal Basis for Forfeiture**:

1) Proceeds of the Defendant's Wire Fraud scheme (including Counts 1-7) are forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C), by way of 28 U.S.C. § 2461(c);

*United States v. Shibley* – CR20-174 JCC
TRIAL BRIEF- Page 19

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

2)    Proceeds of the Defendant's Bank Fraud scheme (including Counts 8-10) are forfeitable pursuant to 18 U.S.C. § 982(a)(2); and

3)    Property involved in the Defendant's Money Laundering offenses (Counts 11-15) is forfeitable pursuant to 18 U.S.C. § 982(a)(1).

**B.    Factual Basis for Forfeiture:**

The United States expects the evidence at trial to establish the proceeds the Defendant obtained from his Wire Fraud and Bank Fraud schemes and that the funds identified above constitute or are traceable to those proceeds. The United States also expects the evidence at trial to establish that the $804,816.63 seized from Wells Fargo account ending in 3536 was involved in the Defendant's Money Laundering, or is traceable to such property. The sum of money to be forfeited reflects the unrecovered proceeds the Defendant obtained from his Wire Fraud and Bank Fraud schemes.

1)    **$804,816.63 – Wire Fraud, Bank Fraud, and Money Laundering**: The Defendant fraudulently applied for and received a PPP loan totaling $960,000 in the name of his business, **The A Team Holdings LLC**. $960,000 was wired from Customers Bank into The A Team Holdings LLC account at Wells Fargo ending 9116. On May 4, 2020, all of these funds were transferred from the account ending 9116 into a Wells Fargo account ending 3536. $162,075.59 of the funds were thereafter withdrawn from the account ending 3536. On or about May 27, 2020, the United States seized the remaining fraudulently obtained PPP funds, $804,816.63, from this account. These funds are proceeds of the Defendant's Wire Fraud and Bank Fraud schemes and were involved in the Money Laundering offenses described in Counts 11 and 14. The United States also seeks forfeiture of a sum of money including the $162,075.59 in proceeds the Defendant withdrew from this account.

2)    **$100,000 – Wire Fraud and Bank Fraud**: The Defendant fraudulently applied for and received a PPP loan totaling $100,000 in the name of **ES1 LLC**. $100,000 in PPP funds was wired from TCF National Bank to an ES1 LLC Wells Fargo account ending 9124. On or about May 21, 2020, all of these funds were transferred

*United States v. Shibley* – CR20-174 JCC
TRIAL BRIEF- Page 20

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

from the account ending 9124 into a Wells Fargo account ending 2378. On or about May 29, 2020, the United States seized the fraudulently obtained PPP funds, $100,000, from this account. These funds are proceeds of the Defendant's Wire Fraud and Bank Fraud schemes.

3) **$49,500.86 -Wire Fraud and Bank Fraud**: The Defendant fraudulently applied for and received a PPP loan totaling $100,000 in the name of his business, **Eric R Shibley MD PLLC**. $100,000 of PPP funds was wired from TCF National Bank into the Defendant's Navy Federal CU account ending 9972. On or about May 12, 2020, all of these funds were transferred from the account ending 9972 into the Defendant's Navy Federal Credit Union account ending 7528. $50,000 of the funds were thereafter withdrawn from the account. On or about May 27, 2020, the United States seized the remaining fraudulently obtained PPP funds, $49,500.86, from this account. These funds are proceeds of the Defendant's Wire Fraud and Bank Fraud schemes. The United States also seeks forfeiture of a sum of money including the $50,000 in proceeds the Defendant withdrew from this account.

4) **$114,440 – Wire Fraud**: The Defendant submitted a fraudulent EIDL application on behalf of **Dituri Construction LLC** to the SBA. The SBA wired $114,900 to a Verity Credit Union account ending 5400 in the name of Dituri Construction LLC. On June 19, 2020, $114,440 was transferred from the account ending 5400 to another Dituri Construction LLC account ending 5390. On or about June 25, 2020, the United States seized the remaining fraudulently obtained SBA funds, $114,440, from this account. These funds are proceeds of the Defendant's Wire Fraud scheme.

5) **$114,743.59 – Wire Fraud and Money Laundering**: The Defendant submitted a fraudulent EIDL application on behalf of **SS1 LLC** to the SBA. The SBA wired $114,900 to a Verity Credit Union account ending 5330 in the name of SS1 LLC. On June 19, 2020, $114,743.59 was transferred from the account ending 5330 to another SS1 LLC account ending 5320. On or about June 25, 2020, the United States seized the remaining fraudulently obtained SBA funds, $114,743.59, from this account. These

*United States v. Shibley* – CR20-174 JCC
TRIAL BRIEF- Page 21

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | funds are proceeds of the Defendant's Wire Fraud scheme and were involved in the
2 | Money Laundering offense described in Count 15.

3 |       6)     The Defendant received approximately $2,821,200 in proceeds from his
4 | Wire Fraud and Bank Fraud schemes.  Of this total, the United States has recovered
5 | approximately $1,183,501.08 with seizure warrants (the above-described funds).
6 | Financial institutions also recovered approximately $1,383,500.  The Defendant withdrew
7 | approximately $200,000 in bulk cash, which is also proceeds of these schemes.  In
8 | addition to forfeiture of the proceeds seized with seizure warrants, the United States seeks
9 | forfeiture of a sum of money that reflects the unrecovered proceeds obtained by the
10 | Defendant -- $254,199.   All of these funds were proceeds of the underlying Wire Fraud
11 | and Bank Fraud schemes.

12 | **C.**    **Legal Standard for Forfeiture**

13 |       Criminal forfeiture is a form of punishment that is imposed as part of a criminal
14 | sentence.  *Libretti v. United States*, 516 U.S. 29, 39 – 40 (1995).  For the government to
15 | criminally forfeit property, there must be a predicate criminal conviction, a statute
16 | authorizing forfeiture for the crime of conviction, and evidence to support the statutorily
17 | required nexus between the property and the crime of conviction.  *See e.g., United States*
18 | *v. Garcia-Guizar,* 160 F.3d 511, 518 – 20 (9th Cir. 1998) (reviewing these requirements).
19 | With respect to the required nexus, the government must establish the forfeitability of the
20 | relevant property by a preponderance of the evidence.  *United States v. Martin,* 662 F.3d
21 | 301, 307 (4th Cir.2011); *see also United States v. Rutgard*, 116 F.3d 1270, 1293 (9th Cir.
22 | 1997); *United States v. Hernandez-Escarsega,* 886 F.2d 1560, 1576-77 (9th Cir. 1989).

23 |       In other words, depending on the relevant forfeiture statute, the government must
24 | present evidence that establishes the relevant property is, "more likely than not,"
25 | forfeitable as *proceeds* of the crime, property that *facilitated* the crime, and/or property
26 | *involved in* the crime.  This lower standard of proof "is constitutional because the
27 | criminal forfeiture provision does not itself describe a separate offense, but is merely an
28 | 'additional penalty' for an offense that must be provide beyond a reasonable doubt."

1   *United States v. Garcia-Guizar,* 160 F.3d at 518 (citing *United States v. Hernandez-*
2   *Escarsega,* 886 F.2d at 1577).

3        In this case, there is statutory authority to forfeit the identified property following
4   the Defendant's conviction, as set forth above.  The evidence introduced at trial will
5   establish, to a preponderance, the proceeds the Defendant obtained from his Wire Fraud
6   and Bank Fraud schemes, the property involved in the Defendant's Money Laundering,
7   and the nexus between the identified property and the Defendant's offenses.

8   **D.    Forfeiture Process**

9        Federal Rule of Criminal Procedure 32.2 sets out the procedures for determining
10  the forfeitability of property in a criminal case.  Forfeitures are decided after a guilty
11  verdict is returned on a count that supports the forfeiture.  *See* Fed. R. Crim. P.
12  32.2(b)(1)(A).  At that juncture, the specific question for the fact finder is "whether the
13  government [has established the] requisite nexus between the property and the offense."
14  *See id.*  The forfeiture of a sum of money is determined by the court, not the jury.  A
15  defendant has no right to have a jury to determine the forfeiture of a money judgment.
16  *See id.* ("If the government seeks a personal money judgment, the court must determine
17  the amount of money that the defendant will be ordered to pay.").

18       As forfeiture is determined post-conviction, and is considered part of sentencing,
19  the rules of evidence do not strictly apply to forfeiture proceedings.  *See e.g.,*
20  *United States v. Hatfield,* 795 F. Supp. 2d 219, 229 – 30 (E.D.N.Y. 2011) (holding
21  neither the Federal Rules of Evidence nor *Daubert* apply to forfeiture hearings) and
22  *United States v. Creighton,* 52 Fed. Appx. 31, 35 – 36 (9th Cir. 2002) ("hearsay evidence
23  is permissible at sentencing and does not, *per se*, lack sufficient indicia of reliability").
24  The fact finder may consider any evidence that is "relevant and reliable."  Fed. R. Crim.
25  P. 32.2(b)(1)(B).  This includes any evidence presented by the parties during trial on the
26  substantive criminal offenses.  *See id.*  ("The court's [or jury's forfeiture] determination
27  may be based on evidence already in the record …."); *see also United States v. Newman,*
28  659 F.3d 1235, 1244 – 45 (9th Cir. 2011) (same).

*United States v. Shibley* – CR20-174 JCC
TRIAL BRIEF- Page 23

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

If the Defendant is convicted of one or more of the identified offenses, the United States expects to present the forfeiture case in a supplemental proceeding pursuant to Fed. R. Crim. P. 32.2(b)(1). The United States is willing to waive its right to retain the jury for that proceeding and have the Court decide the forfeitures. See Fed. R. Crim. P. 32.2(b)(5). If, however, the Defendant is unwilling to waive, the United States is prepared to present the forfeiture case to the jury. According to the Rules, the court must determine whether the jury will be retained for forfeiture **before the jury begins deliberating.** Fed. R. Crim. P. 32(b)(5)(A). In the event that jury is involved in the forfeiture proceeding, the United States is submitting proposed forfeiture jury instructions and a special forfeiture verdict form. The Court, not the jury, determines the sum of money to be forfeited. For this reason, the proposed jury instructions and special verdict form do not address the forfeiture of a sum of money.

In the forfeiture proceeding, the United States expects to rely primarily on the testimony and evidence introduced during the guilt/innocence phase of trial. The United States expects to present argument with respect to the forfeiture of the identified property, but it does not expect to present substantial additional testimony or exhibits. The United States reserves its right, however, to offer alternative arguments and evidence in support of forfeiture, and to take different positions with respect to forfeiture, as necessary to respond to developments at trial.

//
//

*United States v. Shibley* – CR20-174 JCC
TRIAL BRIEF- Page 24

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## X.    CONCLUSION

This Trial Brief is intended to familiarize the Court with the government's case and evidentiary issues related to the trial presentation. The government will supplement this brief as necessary if additional issues arise.

DATED this 1st day of November, 2021.

Respectfully submitted,

NICHOLAS W. BROWN
United States Attorney

JOSEPH BEEMSTERBOER
Acting Chief, Fraud Section,
Criminal Division
U.S. Department of Justice

*s/ Brian Werner*
BRIAN WERNER
Assistant United States Attorney

*s/ Laura Connelly*
LAURA CONNELLY
Trial Attorney

*United States v. Shibley* – CR20-174 JCC
TRIAL BRIEF- Page 25

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970