Honorable John Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON, SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) No. CR20-174 JCC<br>)<br>) DEFENSE TRIAL<br>) MEMORANDUM |
| v. | ) |
| ERIC SHIBLEY | ) |
| Defendant. | ) |

Defendant Eric Shibley is charged by indictment with several wire fraud, bank fraud and money laundering counts arising from various loan applications he made in the spring of 2020 in connection with the federal Paycheck Protection Program (PPP) and the Economic Injury Disaster Loan (EIDL) program.

Counts 1-7 charge wire fraud based on Mr. Shibley's alleged execution of a scheme to defraud the PPP and EIDL program by submitting false and fraudulent loan applications in violation of 18 USC §1343.

Counts 8-10 charge bank fraud based on similar conduct invoking particular financial institutions, in violation of 18 USC §1344(2). 841(b)(1)(A).

Counts 11-15 allege that Mr. Shibley laundering the proceeds of his allegedly fraudulent scheme in violation of 18 USC §1957.

Mr. Shibley denies that he committed any fraud or laundered any ill-gotten gains. A trial is now set for November 15, 2021.

**1. The charges**

    **a. Wire fraud**

Wire fraud requires proof of intent to "deceive *and* cheat". *United States v. Miller*, 953 F.3d 1095, 1101-03 (9th Cir. 2020). "[T]to be guilty of wire fraud, a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions. In other words, a defendant must intend to deceive *and* cheat." *Id.* at 1101.

A defendant acts with the intent to *deceive* when he makes false statements or utilizes other forms of deception. *Id.*, 953 F.3d at 1101. A defendant acts with the intent to *cheat* when he engages in "a scheme or artifice to defraud or obtain money or property" and "deprive a victim of money or property[.]" thereby "cheat[ing] someone out of something valuable." *Id.*

In clarifying the distinction between "deceive" and "cheat," *Miller* cites to *United States v. Walters*, 997 F.2d 1219 (7th Cir. 1993). In *Walters*, the court reviewed the conviction for mail fraud of a sports agent who had defrauded the NCAA, not by stealing its property, but by inducing college athletes to sign secret representation contracts in violation of the Association's rules. *Id.* at 1221. Finding that the agent had deceived, but not cheated, his victim, the Seventh Circuit reversed the agent's conviction, holding that

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge Island, WA 98110
(206) 624-3211

the statute requires "a scheme to obtain money or other property from the victim," and that while a deprivation of money or property is a necessary condition of mail fraud, "[l]osses that occur as byproducts of a deceitful scheme do not satisfy the statutory requirement" *Id.* at 1227.

Materiality is an essential element of the crime of wire fraud. *Neder v. United States*, 527 U.S. 1 (1999); *United States v. Milovanovic*, 678 F.3d 713, 726-27 (9th Cir. 2012) (en banc).

### b. Bank fraud

A defendant's good faith in the truth of alleged misrepresentations upon which a bank fraud charge is based negates the intent to defraud. In *United States v. Molinaro*, 11 F.3d 853, 863 (9th Cir.1993), a prosecution for bank fraud, the Ninth Circuit approved this instruction:

> You may determine whether a defendant had an honest, good faith belief in the truth of the specific misrepresentations alleged in the indictment in determining whether or not the defendant acted with intent to defraud. However, a defendant's belief that the victims of the fraud will be paid in the future or will sustain no economic loss is no defense to the crime.

Materiality is an essential element of the crime of bank fraud. *Neder v. United States*, 527 U.S. 1 (1999). The common law test for materiality in the false statement statutes, i.e., having a natural tendency to influence, or being capable of influencing, a financial institution to part with money or property, is the preferred formulation. *United States v. Peterson,* 538 F.3d 1064, 1072 (9th Cir.2008).

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge Island, WA 98110
(206) 624-3211

### c. Money laundering

The government must prove Mr. Shibley's knowledge that the transactions in question involved criminally derived property. 9th Cir. Crim. Jury Instr. 8.150.

" Criminally derived property" refers to the "proceeds" of a criminal offense. "Proceeds" means "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1957(f)(3); 18 U.S.C. § 1956(c)(9).

The defense has proposed 9th Cir. Crim. Jury Instr. 8.150 on these counts.

## 2. Voir dire and the Need for a Juror Questionnaire

Voir dire plays a critical function in assuring a criminal defendant that his Sixth Amendment right to an impartial jury will be honored. Lack of adequate voir dire impairs the right to exercise peremptory challenges. *Rosales-Lopez v. United States*, 451 UlS. 182, 188 (1981). A defendant must be permitted sufficient inquiry into the backgrounds and attitudes of prospective jurors to enable the intelligent exercise of peremptory challenges. These challenges are "worthless if trial counsel is not afforded an opportunity to gain the necessary information upon which to base such strikes." *United States v. Ledee*, 549 F.2d 990, 993 (5th Cir. 1977).

The typical potential juror's reticence to reveal meaningful information about him/herself in a public forum amidst strangers will be heightened in a Covid-19 era court setting with a mask mandate and the presence of Plexiglass. Even to the extent jurors

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge Island, WA 98110
(206) 624-3211

overcome these social barriers to meaningful communication, the ability of the defense, as noted in a previous pleading, to discern prospective jurors' demeanor in discussing themselves and their attitudes will be significantly hampered.

The use of a juror questionnaire directed to all members of the venire panel in advance of in-court proceedings would enlighten the court and the parties and promote the intelligent exercise of peremptory and for cause challenges as well as promote overall efficiency and expediency. With privacy and sufficient time to consider their answers, prospective jurors will be more open and candid and less biased, influenced and intimidated by the courtroom atmosphere and by other jurors.

A suggested questionnaire is attached to the proposed voir questions for the court's consideration.

**3. The defense should be given wide latitude in cross-examining government witnesses.**

Defense impeachment of critical government witnesses is normally given wide latitude. Impeachment for bias is appropriate to expose reasons a witness might slant, unconsciously or otherwise, his or her testimony in favor of or against a party. *United States v. Abel*, 469 U.S. 45, 105, S.Ct. 465 (1984). The opportunity to reveal a witness's motivation to lie or embellish is sufficiently important as to enjoy constitutional protection in criminal cases. *Olden v. Kentucky* , 488 U.S. 227, 109 S.Ct. 480 (1988). See also *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105 (1974); *United States v. Landerman*, 109 F.3d 1053, 1061-64 (5th Cir. 1997)(prosecution witness had felony charges pending

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge Island, WA 98110
(206) 624-3211

against him), *modified on other grounds*, 116 F.3d 119; and *United States v. Hankey*, 203 F.3d 1160, 1171-73 (9th Cir. 2000)(witness feared gang retaliation). Other examples of witness bias are a personal relationship with a party or someone related to the case and having a financial stake in the outcome. See *Justice v. Hoke*, 90 F. 3d 43 (2d Cir. 1996) (witness motivated to fabricate because of dispute with defendant) and *Collins v. Wayne Corp.*, 621 F.2d 777 (5th Cir. 1980)(fees earned by expert witness).

Equally appropriate is impeachment by prior inconsistent statement. See ER 613. A witness may be impeached by any kind of prior statement — oral or written, sworn or unsworn. See *Jankins v. TDC Management Corp.*, 21 F.3d 436 (D.C. Cir. 1994). While the witness's prior statement must be inconsistent with his/her prior testimony, direct contradiction is not required. *United States v. Richardson*, 515 F.3d 74, 84 (1st Cir. 2008). A prior statement is inconsistent if it, taken as a whole, either by what it says or omits to say, suggests that the fact in question is different from the testimony sought to be contradicted. *United States v. Barile*, 286 F.3d 749, 755 (4th Cir. 2002). If the witness denies the prior statement, extrinsic evidence is normally admissible to prove the inconsistency. ER 613(b).

The government seeks to prevent the defense from using the primary tool at its disposal in cross-examining prosecution witnesses: the official summary reports of witness interviews, also known as 302s. If strictly enforced this would completely undermine the basic constitutional right to confront witnesses. Typically, there is no

other evidence of what a witness has previously said.  Federal witnesses only rarely grant defense interviews; most have not testified before the grand jury and there is no other record of prior statements.  The 302s are, of course, government productions and affirmatively represent an official account summarizing what witnesses have said in the past.

While it may be true that 302 reports are not verbatim accounts of the witnesses' prior statements, they reflect the government's deliberate choice to not record the statements.  Every person providing an official account to law enforcement does so subject to strict false reporting laws, and the reporting law enforcement officials are under a sworn obligation to render accurate accounts.  Under ER 613 the witness has the prerogative to deny making the statement and the government, presumably, could bolster the denial with a showing that the official report was somehow mistaken.

The court should reject this transparent attempt by the government to avoid scrutiny of its witnesses and permit wide latitude in their cross-examination by the defense.

**4.  Other evidentiary issues**

**In limine matters.**  The parties have filed competing in limine motions and will complete responsive pleadings on the schedule set by the court.  A stipulation to one or more pending matters is still possible.

**Missing witness argument.**  To obtain an instruction on this issue counsel must

show that the witness(es) was uniquely available to the government and that, under the circumstances, an inference of unfavorable testimony from an absent witness is a natural and reasonable one. *United States v. Leal-Del Carmen*, 697 F.3d 964 (9th cir. 2012). Prior to the close of the evidence in the case, the issue is premature. It should properly be addressed after the parties have rested and prior to final argument.

Respectfully submitted this 5th day of November, 2021.

/s/ Michael Nance
Attorney for defendant Eric Shibley

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge Island, WA 98110
(206) 624-3211

**Certificate of Service**

I hereby certify that on the 5th day of November, 2021, I electronically filed the foregoing with the clerk of the court using the CM/ECF system. Notice and copies of this filing will be sent electronically to counsel of other parties who are parties to the ECF system.

/s/ Michael Nance, WSBA # 13933

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge Island, WA 98110
(206) 624-3211